PEOPLE v HARTUNIEWICZ

Docket No. 298163. Submitted September 8, 2011, at Grand Rapids. Decided September 29, 2011, at 9:00 a.m.

A jury convicted Benjamin A. Hartuniewicz in the Kent Circuit Court of possessing ketamine in violation of MCL 333.7403(2)(b)(*ii*) of the controlled substances act (CSA), MCL 333.7101 *et seq.*, and he was sentenced to 48 months of probation. At trial, defendant moved for a directed verdict on the ground that the prosecution had failed to establish that the ketamine was not "in a proportion or concentration to vitiate the potential for abuse" and therefore excluded from the schedule of controlled substances under MCL 333.7227(1). The court, James R. Redford, J., denied the motion, and also denied defendant's request for a special jury instruction based on MCL 333.7227(1). Defendant appealed.

The Court of Appeals *held*:

1. The prosecution was not required to disprove that the ketamine defendant possessed was excluded from the schedule of controlled substances under MCL 333.7227(1) for being in a proportion or concentration that vitiated the potential for abuse. Exceptions, exemptions, or exclusions from the legal definition of a controlled substance are not elements of controlled-substance offenses; rather, they are affirmative defenses that a defendant may present to rebut the state's evidence.

2. To prove possession of ketamine, the prosecution was required to establish (1) that the substance in question was ketamine, (2) that defendant possessed some amount of ketamine, (3) that defendant was not authorized to possess ketamine, and (4) that defendant knowingly possessed the ketamine. Because the evidence, when viewed in the light most favorable to the prosecution, was sufficient to support a finding of guilt with respect to each element of the offense, the trial court properly denied defendant's motion for a directed verdict.

3. The trial court properly denied defendant's request for a special jury instruction based on MCL 333.7227(1) because defendant presented no evidence that the ketamine found inside his

residence was mixed with any other substance, much less that it was in a proportion or concentration that vitiated its potential for abuse.

Affirmed.

CRIMINAL LAW — CONTROLLED SUBSTANCES — ELEMENTS OF POSSESSION — EXCLUSIONS FROM SCHEDULES OF CONTROLLED SUBSTANCES.

To prove possession of ketamine, the prosecution was required to establish (1) that the substance in question was ketamine, (2) that defendant possessed some amount of ketamine, (3) that defendant was not authorized to possess ketamine, and (4) that defendant knowingly possessed the ketamine; the prosecution was not required to establish that the ketamine was not excluded from the schedules of controlled substances by MCL 333.7216(1)(h) for being in a proportion or concentration that vitiated the potential for abuse (MCL 333.7401 *et seq.*).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Assistant Prosecuting Attorney, for the people.

*Charles B. Covello* for defendant.

Before: GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ.

GLEICHER, P.J. A jury convicted defendant Benjamin Alan Hartuniewicz of possession of ketamine, a schedule 3 controlled substance,[1] in violation of MCL 333.7403(2)(b)(*ii*) of the controlled substances act (CSA), MCL 333.7101 *et seq.*[2] Defendant argues that the prosecution failed to establish, as an element of the

---

[1] "Any material, compound, mixture, or preparation containing any quantity of ketamine" is included within the definition of a schedule 3 controlled substance by MCL 333.7216(1)(h). Ketamine is also federally classified as a schedule III controlled substance. See 21 CFR 1308.13(c)(7).

[2] The jury acquitted defendant of maintaining a drug house in violation of MCL 333.7405(d).

charged offense, that the ketamine was not "in a proportion or concentration to vitiate the potential for abuse," because such diluted substances are "excluded" from the CSA by MCL 333.7227(1). We hold that the exclusion in MCL 333.7227(1) is not an element of a possession offense, but an affirmative defense for which a defendant bears the burden of proof. Because defendant presented no evidence demonstrating that the ketamine was mixed with other substances or was "in a proportion or concentration to vitiate the potential for abuse," we affirm the trial court's denial of defendant's motion for a directed verdict and rejection of defendant's proposed jury instruction.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 24, 2009, defendant's probation officer and the local probation supervisor went to defendant's home for an unscheduled residence visit. When defendant came to the door, his pupils were dilated, his face was flushed, and he acted confused and disoriented. The officers secured defendant's consent to search the residence. They found a plate under defendant's bed that held a white powdery substance, an assortment of pills and tablets, a straw, defendant's driver's license, and a small plastic bag containing a white powdery substance. The officers also found an empty bag coated with a white powdery residue. Defendant admitted to the probation officers that certain items were prescription medications that he had received from friends. Defendant claimed that he purchased the other substances over the Internet. Defendant further stated that he used the substances to "get high."

Subsequent forensic testing negated the presence of any controlled substances in the pills, tablets, and powder on the plate and in the full bag. However, the white

powdery residue found on the otherwise empty bag was analyzed and found to contain less than one milligram of ketamine.[3] During cross-examination of the forensic analyst, defense counsel inquired about the proportion of ketamine to other substances found within the residue. The witness testified that he had not identified any other substances within the residue or analyzed the ratio of ketamine to other substances. The witness further testified that such quantitative analysis would have been difficult to conduct on such a small sample.

At the close of the prosecution's case in chief, defense counsel moved for a directed verdict. Defense counsel argued that the prosecution had the burden to establish that a substance is proscribed by the CSA and is not excluded from the definition of "controlled substance" under MCL 333.7227(1) for not being "in a proportion or concentration to vitiate the potential for abuse . . . ." In other words, according to defendant, to establish the elements of the charged possession offense, the prosecution was required to establish that the ketamine residue was not so diluted by other substances as to vitiate its potential for abuse. Because the prosecution presented no evidence in that regard, defense counsel argued that it failed to prove the elements of the crime as a matter of law. In the alternative, defense counsel requested the court to read the exclusion of MCL 333.7227(1) into the jury instructions.

---

[3] Ketamine is "a legitimate intravenous anesthetic" used for both veterinary and human purposes, but it is also used "as a hallucinogen by recreational drug users," 9 Attorneys' Textbook of Medicine (3d ed), ¶ 64.72, and as a "date rape drug," see 21 USC 841(g)(2)(A)(ii); *Date Rape Drugs: XTC, Rohypnol, Ketamine*, University of Notre Dame Office of Alcohol & Drug Education <http://oade.nd.edu/educate-yourself-drugs/rohypnol-flunitrazepam/> (accessed September 13, 2011); see also *Ketamine*, Center for Substance Abuse Research <http://www.cesar.umd.edu/cesar/drugs/ketamine.asp> (accessed September 13, 2011).

The trial court denied defendant's motion for directed verdict and his request for a special jury instruction. In relation to the motion for directed verdict, the court noted that the evidence, taken in the light most favorable to the prosecution, was sufficient to support a guilty verdict for possession. Specifically, the evidence tended to prove that defendant knowingly possessed ketamine. In relation to the jury instructions, the court avoided answering the legal question defendant raised regarding the interpretation of the statutes. Instead, the court decided the issue on the evidence:

> I believe as a matter of law that there was just not any evidence to suggest that it was in a proportion or concentration to vitiate the potential for abuse that's before the Court. And I know the defense does not have the burden to do anything, of course, but there's just no evidence of it, in the Court's estimation, that it's been somehow diluted to such a level that it can't have any potential, and for that reason I'm respectfully readopting my decision not to give a special instruction . . . .

The jury then convicted defendant of possession of ketamine, and the court sentenced him to 48 months of probation.

## II. STANDARD OF REVIEW

At issue in this appeal is the interpretation and coordination of various provisions of the CSA. We review issues of statutory interpretation de novo. *People v Kowalski*, 489 Mich 488, 497; 803 NW2d 200 (2011).

> The primary goal in interpreting the meaning of a statute is "to ascertain and give effect to the intent of the Legislature . . . ." The first step in determining legislative intent is consideration of the statutory language itself. Statutory language must be read in the context of the act as a whole, giving every word its plain and ordinary meaning. When

the language is clear and unambiguous, we enforce the statute as written. [*Id.* at 497-498, quoting *People v Lown*, 488 Mich 242, 254; 794 NW2d 9 (2011).]

Once we discern the intent of the Legislature regarding the elements of the underlying criminal offense, we can analyze the trial court's denial of defendant's motion for directed verdict and rejection of defendant's proposed special jury instruction.

In reviewing the denial of a motion for a directed verdict of acquittal, this Court reviews the evidence in a light most favorable to the prosecution in order to "determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." [*People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006), quoting *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003).]

We generally review claims of instructional error de novo. *Kowalski*, 489 Mich at 501. However, we review for an abuse of discretion a trial court's determination that a specific instruction is inapplicable given the facts of the case. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). We consider the jury instructions as a whole to determine whether the court omitted an element of the offense, misinformed the jury on the law, or otherwise presented erroneous instructions. See *Kowalski*, 489 Mich at 501.

### III. DEFENDANT HAS THE BURDEN OF ESTABLISHING AN EXCEPTION TO THE CSA AS AN AFFIRMATIVE DEFENSE

MCL 333.7403(1) proscribes the knowing or intentional possession of a controlled substance unless obtained directly through a valid prescription or valid doctor's order. A person illegally possessing a schedule 3 controlled substance is guilty of a two-year felony. MCL

333.7403(2)(b)(*ii*). Defendant was convicted of possession of a schedule 3 controlled substance as defined in MCL 333.7216(1)(h):

> (1) The following controlled substances are included in schedule 3:
>
>           \*   \*   \*
>
> (h) Any material, compound, mixture, or preparation containing any quantity of ketamine, a salt of ketamine, an isomer of ketamine, or a salt of an isomer of ketamine.[4]

The CSA enumerates various exclusions, exceptions, and exemptions from the schedules of controlled substances. MCL 333.7227(1) excludes "[a] nonnarcotic substance that under the federal food, drug and cosmetic act may be lawfully dispensed without a prescription" and "[a] substance that contains 1 or more controlled substances in a proportion or concentration to vitiate the potential for abuse . . . ." MCL 333.7227(3) provides: "An excluded substance is a deleterious drug and may be manufactured, distributed, or dispensed only by a person who is registered to manufacture, distribute, or dispense a controlled substance under [MCL 333.7208(2)]." MCL 333.7229 integrates various exclusions, exceptions, and exemptions from federal law:

---

[4] MCL 333.7216(2) allows the Department of Community Health to "promulgate rules to except" a substance from the CSA "if the compound, mixture, or preparation contains 1 or more active medicinal ingredients not having a stimulant or depressant effect on the central nervous system" and are combined in a way to "vitiate the potential for abuse . . . ." There is no exception in this state's administrative code for any ketamine compound, mixture, or preparation. See Mich Admin Code, R 338.3120 through 338.3122. There is also no exception for ketamine compounds, mixtures, or preparations in the federal code. See 21 USC 801 *et seq.*

A compound, mixture, or preparation containing a depressant or stimulant substance or of similar quantitative composition shown in federal regulations as an excepted compound or which is the same except that it contains a lesser quantity of a controlled substance or other substances which do not have a stimulant, depressant, or hallucinogenic effect, and which is restricted by law to dispensing on prescription is excepted from [MCL 333.7212, 333.7214, 333.7216, 333.7218, and 333.7220]. Compliance with federal law respecting an excepted compound is considered compliance with this section.

Defendant asserts that the MCL 333.7227(1) exclusion of "[a] substance that contains 1 or more controlled substances in a proportion or concentration to vitiate the potential for abuse" from the CSA's schedules amounts to an element of a controlled substance offense. Accordingly, defendant contends that the prosecution has the burden of proving, in its case in chief, that the subject substance does not fall within this exclusion.

Contrary to defendant's argument, the CSA expressly places the burden of proving "an exemption or exception" on the defendant:

It is not necessary for this state to negate any exemption or exception in this article in a complaint, information, indictment, or other pleading or in a trial, hearing, or other proceeding under this article. The burden of proof of an exemption or exception is upon the person claiming it. [MCL 333.7531(1).]

In *People v Pegenau*, 447 Mich 278, 292; 523 NW2d 325 (1994), our Supreme Court interpreted the burden described in MCL 333.7531(2)[5] as an exemption to the

---

[5] MCL 333.7531(2) provides:

In the absence of proof that a person is the authorized holder of an appropriate license or order form issued under this article, the

CSA "rather than an element of the crime." The *Pegenau* Court analogized possession of a controlled substance proscribed under MCL 333.7403(1) to other statutory offenses that can be disproved with evidence of a valid license or authorization, such as carrying a concealed weapon. *Id.* at 289-292. Consistently with precedent interpreting those statutes, the *Pegenau* Court held that the elements of possession under MCL 333.7403(1) are limited to knowing or intentional possession of a controlled substance. Once the prosecution presents a prima facie case of those elements, the defendant bears the burden of affirmatively defending the action with proof of a valid prescription. *Id.* at 292-293.

Before *Pegenau*, this Court repeatedly considered the burden of proof in relation to exceptions to the CSA. And, having done so, this Court consistently ruled that these exceptions are affirmative defenses, not elements of the underlying offense. See *People v Bates*, 91 Mich App 506, 513-516; 283 NW2d 785 (1979) (the defendant has the burden to prove the exemption now located in MCL 333.7531[2] because the lack of authorization to deliver a controlled substance is not an element of a delivery charge); *People v Bailey*, 85 Mich App 594, 596; 272 NW2d 147 (1978) (same); *People v Beatty*, 78 Mich App 510, 513-515; 259 NW2d 892 (1977) (the CSA creates a general prohibition on the delivery of controlled substances and the defendant has the burden to establish a specific exception); *People v Dean*, 74 Mich App 19, 21-28; 253 NW2d 344 (1977), mod in part on other grounds 401 Mich 841 (1977) (the Legislature did not unconstitutionally shift the burden of proof onto defendants under the CSA; defendants merely have the

person is presumed not to be the holder of the license or order form. The burden of proof is upon the person to rebut the presumption.

burden of establishing statutory exceptions as an affirmative defense). The common theme of these opinions is that exceptions, exemptions, and exclusions from the legal definition of "controlled substance" are not elements of a controlled substance offense. Rather, they are affirmative defenses that a defendant may present to rebut the state's evidence. Just as our Supreme Court held in *Pegenau* and this Court stated in *Dean*, "once the people show a prima facie violation" of the CSA, the defendant then has "the burden of going forward, *i.e.*, of injecting some competent evidence of the exempt status, of the drug." *Dean*, 74 Mich App at 27 (citation and quotation marks omitted); see also *Pegenau*, 447 Mich at 292-293.

Relevant to this appeal, MCL 333.7403(1) proscribes the knowing or intentional possession of a controlled substance without authorization. MCL 333.7216(1)(h), in turn, includes within the definition of "controlled substance" "[a]ny material, compound, mixture, or preparation containing any quantity of ketamine . . . ." These are the elements of the charged offense. The prosecution was therefore required to prove only that defendant knowingly or intentionally possessed ketamine without authorization.

MCL 333.7227(1), on the other hand, is an exception or exemption. Once the prosecution presented a prima facie case that defendant knowingly or intentionally possessed ketamine, defendant had the burden to affirmatively defend his innocence by presenting competent evidence that the ketamine discovered within the subject residue was "in a proportion or concentration to vitiate the potential for abuse . . . ."

Yet defendant presented no evidence that the ketamine within the powder residue was part of a compound or mixture including other ingredients that

could have vitiated the ketamine's potential for abuse. In this regard, defendant merely asked the forensic analyst whether he had measured the proportion of ketamine to any other substances that might have been mixed with the ketamine. Defendant never sought to perform an independent analysis of the sample or requested the prosecution to submit the sample for quantitative testing. In short, no evidence indicated that the white powder that tested as ketamine fell outside the definition of a controlled substance.

We further note that defendant is apparently attempting to employ the exclusion of MCL 333.7227(1) to eliminate from the definition of "controlled substance" any drug with the potential for abuse if it is sufficiently diluted with a cutting agent. Under defendant's suggested interpretation of this exclusion, the prosecution would be required to analyze every substance seized in a criminal investigation to determine the concentration of controlled substances and the effect of the particular level of a controlled substance. For example, when officers seize a quantity of crack cocaine, the officers would be required to analyze the sample to determine the concentration of cocaine in relation to other substances, regardless of the undeniable fact that cocaine processed into crack cocaine has no legitimate use. This clearly was not the intention of our Legislature.

Rather, we believe that *Barnett v Indiana*, 579 NE2d 84, 87 (Ind App, 1991), provides a helpful example of how MCL 333.7227(1) is intended to function. Analyzing nearly identical statutory language, the Indiana Court of Appeals held that any particular sample of "acetaminophen with codeine," a combination of a controlled substance with a noncontrolled substance into a legitimate prescription pain reliever, could be

classified as a schedule 3 controlled substance *if* the proportion of codeine were significant enough to cause the potential for abuse. MCL 333.7227(1) functions in the same manner: to decriminalize legitimate, medically sanctioned heterogeneous substances that contain some level of a controlled substance. Defendant has never attempted to establish that ketamine can be or ever is combined with other "ingredients" into a legitimate, medically sanctioned substance in which the ketamine is "in a proportion or concentration to vitiate the potential for abuse." Because defendant completely misunderstood the meaning and application of the statutes, he failed to present any evidence tending to support this affirmative defense.

IV. THE TRIAL COURT PROPERLY DENIED A DIRECTED VERDICT

Given our conclusion that the MCL 333.7227(1) exclusion from the definition of a "controlled substance" is not an element of a controlled substance offense, we affirm the trial court's denial of defendant's motion for a directed verdict. To prove possession of ketamine, the prosecution must establish (1) that the substance in question was ketamine, (2) that defendant possessed some amount of ketamine, (3) that defendant was not authorized to possess ketamine, and (4) that defendant knowingly possessed the ketamine. See *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). The prosecution presented evidence that the substance was, in fact, ketamine. There was no evidence to indicate that defendant was authorized to possess ketamine. And the prosecution presented sufficient evidence from which the jury could determine that defendant knowingly possessed ketamine. The residue was found on a small plastic bag in defendant's residence. Defendant admit-

ted that the bag belonged to him. Defendant indicated that he used the substances found along with the bag "to get high" and that he had illegally secured the substances from friends and over the Internet. This evidence, when viewed in the light most favorable to the prosecution, was sufficient to support a finding of guilt with respect to each element of the charged offense. See *Gillis*, 474 Mich at 113.

## V. THE TRIAL COURT PROPERLY REJECTED DEFENDANT'S PROPOSED SPECIAL JURY INSTRUCTION

Defendant was not entitled to a special jury instruction regarding the MCL 333.7227(1) exclusion from the definition of a "controlled substance." As this exception is not an element of the charged possession offense, defendant was not constitutionally entitled to have the instruction presented to the jury. *Kowalski*, 489 Mich at 501 (holding that protection of a defendant's constitutional right to be convicted only after a jury's "consideration of every essential element of the charged offense" demands that the jury be given proper instructions regarding all elements of the crime). Although not a constitutional mandate, our Supreme Court has held that a trial court must also "instruct the jury . . . , upon request, on material issues, defenses, and theories that are *supported by the evidence.*" *People v Anstey*, 476 Mich 436, 453; 719 NW2d 579 (2006) (emphasis added), citing *People v Rodriguez*, 463 Mich 466, 472-473; 620 NW2d 13 (2000), and *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975). Defendant presented no evidence that the ketamine found inside his residence was mixed with any other substance, let alone any evidence that the ketamine was "in a proportion or concentration to vitiate the potential for abuse[.]" Accordingly, defendant's proffered instruction

based on MCL 333.7227(1) was not supported by the evidence, and the trial court properly denied defendant's request.

Affirmed.

HOEKSTRA and STEPHENS, JJ., concurred with GLEICHER, P.J.